Good morning, Your Honors. May it please the Court, my name is Henry Telfian. I represent the petitioner in this case, Nob Hill. If I may, I'll reserve two or three minutes for rebuttal. We are here today because basically the Board chose to ignore Supreme Court precedent when it issued its decision, as well as ignoring its own precedent. While the Board does not overtly ask you to overrule the Supreme Court or to ignore the Supreme Court, when you distill the Board's position to its essence, that's exactly what it's asking you to do. They're asking you to allow them to have their own contract interpretation system, to interpret a contract in a way that's never been interpreted by the federal courts, or by any court, state or federal. And they're asking it to be a special rule, apparently, for collective bargaining agreements, a rule that makes no sense. So we're starting with a simple question here today. Is there a contract clause that the Union could administer? Because that's what the Board determined. There was a contract clause that the Union could administer, and therefore was entitled to information to administer that clause. But under established Board law, in order there to be a contract clause to administer, you have to have a current potential breach of the contract. That's the Board's decision in Disneyland Park. It's the Board's decision in Connecticut Yankee. But the court has potential. They don't have to decide that there is a breach. I mean, there are kind of two levels of issues as to the contract. As I understand it, your main submission is about the notwithstanding clause. And frankly, I don't understand. Because yes, there's a notwithstanding clause, but that still requires you to know notwithstanding what. And the rest of the sentence is what the Board looked at with regard to deciding whether there were provisions in the contract that were operative, that dealt with current employees as they relate to the opening of the store, but not to the store itself. And I don't see what that has to do with the notwithstanding clause. Then you have the question of whether the particular sub-provisions that they said, how much do they have to go into those clauses and how much do we have to go into what they said about them? And that's where the potential comes in. Right? So there are two levels of inquiry here. And the first one is probably deniable, but the second one probably isn't. Well, I agree and disagree. What's wrong with that positive? Okay. The notwithstanding clause says nothing in the contract, nothing will apply to any new food market or discount center until it has been open for 15 days. Yeah, it won't apply to what's going on in that center. But that doesn't say that nothing in this contract will apply to whether current employees, how current employees are affected by the opening of the store, including the hiring provisions and the benefit, the continuity benefit provisions and so on. I disagree. At least the board was entitled to determine that that was a potential reading of the contract that was made the information requests relevant. I disagree on it. The board was not entitled to do that because the Supreme Court in Cisneros, this court in FBT have all said that when you have a notwithstanding clause, it trumps all other clauses, which are what you see, you're leaving out the question of what does it what trumps what? It says it is agreed that this agreement, the entire agreement, not some parts of the agreement, this will have no application whatsoever to any new food market. Now you're then saying, well, we're taking one part of it, let's say the transfer provision and saying that it can apply to the right of employees to transfer to the new food market. And that's exactly what the union argued. If you go back and read their letters, they said these contract provisions apply to the new store. They didn't say these contract provisions don't apply to the new store, but we have certain rights. What Mr. Rosenfeld said was these contract provisions apply to the new store. Section 1.13 says, no, they may not apply to the new store until it's been open to the public for 15 days. And we don't disagree that once it was open to the public for 15 days, the union was fully capable of enforcing its contract provisions, fully capable of asking for information to which we would be required to respond. But the issue is prior to that 15th day of the opening, were they entitled to information because there was a potential breach at that time? If you say there was a potential breach at that time, you are saying there was some contract clause that potentially gave the employees rights vis-a-vis the new Santa Clara store. And that overrides the notwithstanding language. And to do that, you will be the first court in the history of American jurisprudence to say a notwithstanding clause has an exemption. There's never been a the board cites none? Well, as a matter of fact, there is an on-bank opinion of this court, which discusses a notwithstanding language in the statutory context, where there was at least a major debate. I don't have it on my fingers, but there are exceptions in the statutory context for the notwithstanding language. But I think it's all immaterial. Well, if your conclusion is that the notwithstanding clause allows the union to apply, the question becomes, what does this language mean? What is it that doesn't apply? Because by law, the contract can't apply to the Santa Clara store because the Santa Clara store is not open. There's not a representative complement of employees. The union hasn't proven majority support. So now the language becomes totally meaningless. If your position becomes, well, the notwithstanding language only means that this contract doesn't apply to the new bargaining unit vis-a-vis the new store, they have the right to transfer. We have a right to know what their wage rates are. We have a right to know what the classifications are. We have a right to know the number of job classifications. We have a right to an employee handbook. If they're entitled to all of that, then what is the purpose of this notwithstanding language? It has no purpose because we already have that legal right, because by law, the union can't enforce the contract vis-a-vis the new store. That would be unlawful. It would be a violation of Section 82 of the Act. So this becomes totally illusory, and it deprives Nob Hill of the very benefit of the bargain it wanted, which was to have total flexibility when it comes to opening a new store. That was the purpose of the language. And once the new store was open, the union could say, look, you had an obligation to staff the store with a cadre of existing employees. And we would say, yes, we have that obligation, and now we'll prove to you we met our obligation. But otherwise, it becomes illusory. And more importantly, it violates the conclusion you're reaching is not the conclusion the board reached. If you read the ALJ's decision, she interpreted Section 1.13, and she didn't interpret it the way you're now arguing or asserting. I'm not arguing. Right, I understand. I meant asserting. She is... I'm not asserting. I am asking you what the connection is between the notwithstanding clause and the substance of what's supposed to be notwithstanding. That's what I want to know. Yeah, well... You seem to be putting everything in a notwithstanding clause, but it doesn't stand by itself. It's notwithstanding something. So you have to look at the something and say why it covers. Right, and my answer to that is you read the words themselves, and it says disagreement. It doesn't parse out any part of the agreement. And if you do start to parse it out, then it has no meaning. And as I was about to point out, that's not what the ALJ did, and the board accepted the ALJ's analysis. The board didn't say that the notwithstanding language allows certain things to exist. That's not what the board said. What the board said, because it adopted the ALJ's decision, was that Section 1.13 was an after-acquired stores clause by misreading its own precedent and rallies. And in fairness to the ALJ, that argument was made by the general counsel and made by the union, so she was sort of misled. But putting that aside, she said Section 1.13 is an after-acquired stores clause. The board had an opportunity, because we made these arguments to them, to say that Section 1.13, yes, it has some effect, but it doesn't preclude all sections of the contract. But that's not what the board did. What the board did was adopt the ALJ's decision. So what you have before you is a decision that is an after-acquired stores clause. It didn't say that we're parsing out parts to allow certain parts of the contract to apply and other parts not to apply. So we're faced with the fact that we have language in this contract that says no part of this agreement applies. We have mastroplastics by the Supreme Court saying you have to interpret a contract as a whole. You're not allowed to piecemeal it, which is what the board in its defense basically is telling you. It's saying, well, we use a stated position analysis, which is absolutely wrong. Their argument is, well, we just look to the contract and see if there's something in the contract that the union can rely upon to base its request for information. That simply is not true. Disneyland Park, Connecticut Yankee both hold that the board looks to look at the entire contract, looks to see if there's anything in the contract that precludes the union's grievance or the when there is something in the contract that precludes it, it doesn't say, well, we just look to see if there are words in the contract that potentially would allow the union to make its claim. So that is not, that is not board law. And the board is making that argument to you for the simple reason that they have no way to refute the Supreme Court precedent, both statutory and contractually that notwithstanding clauses preempt, preempt everything else that comes before them. Well, can I just ask where in the ALJ opinion is, I mean, she, she, she does say specifically that. If you look, if you look at the excerpt of record. I know I have the, I want to know, you say that she said it was nothing but an afterthought. Page seven, she says, the excerpt of record page seven, she says respondent argues that the CBA specifically at section 1.13 does not apply to the Santa Clara store and thus the information requested was not relevant and necessary to the union's representational duties. Respondent elaborates that the CBA only applied to the Santa Clara store 15 days after the opening of the store and thus. I know, I read that. Then she says. The language in section 1.13. It's a component of that required provision and I see what you're saying. It also says specifically that it is relevant with regard to certain provisions. All right, go ahead. And even if your honor comes to the conclusion that there could be an exemption to the notwithstanding clause, then I would point you to the board's own decision in the Railey's case. Because in the Railey's case, the board did exactly what we're saying the board should have done in this case. In Railey's case, the argument was, is there an after acquired stores clause? And the parties were arguing whether 1.1 was the clause or 1.13, the language we have today. And the board said no. The record, the after acquired stores clause is 1.1. Section 1.13 determines when it takes effect and it doesn't take effect until 15 days after the store is open to the public. Section 1.13, the board held was a timing provision, not an after acquired stores provision. So that's the same argument we're making to you today. Section 1.13 is a timing provision that says no part of the contract applies until the store has been open to the public. And it simply would make no sense for the board to say, well, 1.13 is a timing provision with respect to 1.1, but it's not a timing provision with respect to any other part of the contract. It has to be the same. And to be the same means it's a timing provision for the entire contract. So even if you say there's exemptions to the notwithstanding language, I would submit to you the board has already decided this case because it decided the Railey's case and it decided 1.13 is a timing provision. If I may, I'll reserve the balance of my time for rebuttal. Thank you, counsel. Mr. Cash, I'll let you hear from the NLRB. Thank you, your honor, and may it please the court. I'll note at the outset that I'd like to reserve four minutes for Mr. Rosenfeld for the intervener. I think we had that in some of the submissions, but I see I'm given 15 right now, so I'd like to use 11. So I guess I'll start by first addressing the main point that Mr. Telfian has made here, which is that this case is all about the board's interpretation of the notwithstanding clause or one of the notwithstanding clauses in section 1.13. And here the board did not find that this case turns on any interpretation of that clause. All the board did was look at that clause and say, okay, this clause affects when the union must be recognized at the new location. That's all it does. Whether you want to call it a timing clause or an after-acquired clause or as the board did in alpha beta, which the judge cited both sort of as a clause that incorporates 1.11 and is both after-acquired clause and timing clause is irrelevant because it doesn't have anything to do with current employees at other store locations. Practically, you were interpreting the contract. Well, Your Honor, yes, although again, we get to review that on a de novo basis. Is that right? Sure. But to be clear, there's no dispute here about the meaning of that clause, regardless of what you call it. There sure is. I mean, he's saying that, I mean, he's notwithstanding language, completely gobbles up anything in the contract that has anything to do with the new store, including what happened, how local existing employees' rights are with regard to the new store. That's his argument. And you're at least saying that this provision deals with the application of the CBA to the new store, but doesn't necessarily, although you're not resolving that, deal with the application of what was in hyperbole provisions of the agreement with regard to current employees if there's a new store. I understand that as to the second piece, you're sort of saying you don't have to come to any conclusion. You just have to say that that's a potentially viable view of it. But with respect to the sort of level one question, you are making a contract. Thank you. Your Honor, I'd separate those two levels out slightly different in terms of what the board gets deference on and what it does not. And for me, in our view, the first level here is what everybody agrees on, which is that the contract, the CBA, does not apply at the new store until 15 days after it opens. That's not in dispute here. Everybody before the board and this court, nobody has disputed that meaning, that reading of that section of the contract. Then the next question is, what does that mean for the employees or for the union's right to request information regarding current employees at other locations? And that is something that we believe is about the scope of the union's representational duties. And while it's informed by contract language, we don't think that's resolved by contract language entirely. So that's what we believe the board would get deference on. I guess I see your question as drawing the line at a slightly different point, but that's where I would draw the line. I thought I said the same thing. Okay. Okay. So given that we all agree on that one, on that interpretation. The Califarian definitely doesn't agree. Sure, Your Honor. I meant as to the first part of the interpretation that the CBA doesn't apply to the new store until 15 days after the store has been opened. The board here is really making a relevance determination. And those determinations depend on the facts of each case. So when Nob Hill sites say cases such as this court's view, such as Disneyland Park, or this court's decision in San Diego newspaper that have language in them that discuss things such as, okay, there must be a current potential breach of the contract or something along those lines. That's in the specific factual circumstances of those cases. Here we have a different factual circumstance. What the union did here to support its information request was it told Nob Hill, okay, we have current employees. It specifically said these employees are looking for more hours. We're hoping that their transfer of rights are treated fairly, and we want to ensure that. It's undisputed that Nob Hill was opening a new store. And the contract provided the union with rights to transfer to the new store and certain rights for how transfers would be treated, including that a caterer of people from the union of union representative employees would, or a caterer of current employees rather, would be used at the new store, and including that transfers would be fairly considered and not rejected for arbitrary reasons if arbitrarily rejected if it was closer to an employee's home base, and a few other contract provisions that are relevant to whether employees are being discriminated against in these transfers. And so that's how the union supported its view here. It's true that perhaps the union used careless language at some point and said, well, these parts of the contract apply to the new store, but it was clear in later correspondences that that's not the argument the union was making. The union was looking at current employees as it has made that argument through to this court and to the board. And the contract has significant relevance, or the requested information has significant relevance to those employees. I also want to address briefly the timing point that Mr. Telfian made. Mr. Telfian made the point that because the cater requirement can only apply 15 days after the store opens, therefore the union's request is premature because the union's requesting all this information that it couldn't assert a contractual breach until 15 days after. But the board's law doesn't require that the union be able to assert a contractual breach immediately on getting the information. All it requires is that the information request be relevant, minimally relevant, or potentially relevant even is the language from Disneyland Park, to the idea, to the question of whether the contract has been breached. And so the number of employees hired in November, okay, and how many of them were union represented at previous stores is certainly relevant to how many who would be still working there in two months in January. These are not, it's not a, it's not sort of a, just because the union couldn't immediately use that information, it renders it totally irrelevant. And so that's, yeah, so I guess that's the timing point. And also as to the current breach point, I do want to point out here that there's several different cases that talk about the current breach. And usually in those cases, in those factual situations, like in San Diego newspaper, like in Disneyland Park, the union's request for information, the factual base of it, basis of it requires that a breach has occurred for that information to be relevant. And the situation when that happens is when an employer has non-union employees working at the same location as union employees, and the union says, okay, we want to know the pay rates. We want to know the hours that these employees are working because we think they might be working actually union jobs. And so that'll go to the remedies that we would get under a breach of the contract, et cetera. And if they were in fact working union jobs, that would be relevant. But the board's law in Disneyland Park, in this court, in San Diego newspaper requires that the union must show some objective fact at that point to reach that, to get that, that right to the information. I mean, it sounds to me what really is out there is that there are cases going in various directions, and I'm not sure I'm seeing the line you're drawing. What is the difference between these grievance cases and this case where you said earlier that there could be a potential grievance. And it's not about grievances, it's about bargaining, or what exactly is the difference? Your Honor, here, the requested, their factual basis for the union's request doesn't require that the contract had been breached for that basis to have happened. In other words, the union knows that there are transfers happening here. The union knows already, that is, it's not in dispute that Nob Hill was soliciting transfers from union employees. You have an interest in administering the agreement, and the board specifically didn't incorporate the ALJ's notion about counseling employees. So leaving, right, I mean, that's out of the picture at this point. Yes, Your Honor. So if they're not going to have a grievance, or they're not going to have, or not going to engage in negotiations, then what are they going to do about it? That is, what is the administrating that could occur other than filing a grievance, or perhaps bargaining some side, or some interpretation, or something like that? Your Honor, here, what the union was entitled to information to is to determine the question of whether it wanted to file a grievance in the first place. And that's why information such as the wage rates of these new positions are relevant. If, you know, if these are all paid positions, and in cases where there already was a grievance, the pay rates weren't relevant, unless there was definitely a breach. In other words, it was, it was types of information that would go to the remedy in a breach situation, as in the wage rates of these non-unit employees, if they are performing unit work here. And so, in terms of whether cases go in multiple directions, it's certainly true that you can look at many factual circumstances. There are lots of information request cases in the board, and many in this court as well, and different factual circumstances come out different ways. And that's why both the board and this court have characterized it as a fact intensive, as a fact intensive inquiry into relevance, looking at the specific situation of the case. And here, I see... Does this court, or any other appellate court, have any case law on this precise question? On the after acquired clause here? No, on the question of what triggers the information request. How, essentially, how close in the demonstration of a potential breach has to be. Not that granular, Your Honor. It's only, the only case that's that relevant in this court is the San Diego newspaper case, where, again, it's this situation of, you know, the union has requested wages about non-unit members because it thinks they're performing bargaining unit work. Thank you, counsel. Thank you. Yes, well, just out of curiosity, are these after acquired store type clauses common? Yes, Your Honor. They're, this exact language comes up in several board cases, although... They're particularly common in the retail store. Retail, yeah. Yes. All right. Thank you, Your Honor. Hey, Mr. Rupp, Rosenfeld. Judge Rupp, I smiled at your question because Mr. Telfian and I have been fighting about these clauses for 40 years. Yes, I thought so. We're old friends on these clauses. I want to respond to Judge Berzon's question because this was a question of anticipatory breach. From the get-go, the company told us they were not going to apply the contract in any respect to the new store, and that is to the employees. So, when I first asked for information, Raley's responded on October 18th saying, nothing is implicated in the current agreement. So, we knew from the beginning they weren't going to respect any provisions of the current agreement as to the new store until 15 days later. So, we knew from the beginning there was going to be a breach, and that's why we pursued the information request. We didn't file a grievance. You're essentially saying that you can meet the Disneyland type standard, even if it were applicable. Well, Disneyland is a little different. Again, that was my case. I know what happened there. We asked for information, and Disneyland was able to establish that there was no factual basis because there'd been clearly no breach, not because the contract didn't apply, because they'd done nothing that could remotely breach the contract, and the board in that case agreed. Here, we have already the employer saying, we're not going to comply with the agreement until sometime later, if at all, and so that's why we pursued it, and the complaint in this case didn't issue until two months after the store opened. So, we still didn't have the information, and that's why it's a little different. We also had some factual evidence they weren't complying because there's a letter in the record from John Nunes, the president, to the company complaining because they're telling workers the store is going to be non-union. So, we already knew they were doing something to sort of interfere with our ability to get workers there. I just want to take this case a slight different direction for just a minute or two in terms of my time, which is that if we'd filed a grievance, and Mr. Telfian's brief concedes we could have filed a grievance 15 days after the contract, after the store opened, that we would have been able to arbitrate this case notwithstanding their claim of the non-withstanding clause because American Manufacturing says we get to arbitrate any case, even if it's frivolous, even if we asserted that they're going to breach more than 15 days before. So, we would have gotten arbitration. I just want to call the court's attention to the case, Your Honor, Judge Berzon, you wrote drywall dynamics. If we'd gone to arbitration, an arbitrator looked at the word notwithstanding and said, I don't agree with the company, I agree with the union, I'm going to interpret it differently to allow the union to assert the rights of the agreement to such things as transfer, no individual agreements, and so on, and notwithstanding only if, as Your Honor put it, the what, which is the new store, that decision would have been affirmed. So, our whole basis of our request was you weren't complying with the agreement, transfer, and the heart of it was the cadre. That's what after-required stores... What you're essentially saying is you have a plausible, you would have a plausible grievance in the sense that it could have prevailed before an arbitrator, and if it did, it would have been upheld. And that's the ACME standard, a plausible grievance that could possibly sustain. The board doesn't interpret the contract, make a final decision. We had a plausible grievance which could have gone arbitration, could have been sustained under drywall dynamics. Thank you, counsel. Thank you. I'll hear a rebuttal. You're muted. Let me just quickly respond to Mr. Rosenfeld's new argument about arbitration. The fact is they didn't file a grievance saying, your interpretation of the notwithstanding language is wrong, and go to arbitration. We would have been happy to do that, and we would have argued to an arbitrator that the notwithstanding language has been decided by the Supreme Court. They chose to file a board charge, which now brings it... Except for the fact that they didn't have the information, so it would have been pretty difficult to file the arbitration. I'm not arguing the merits of their transfer or all those arguments. I'm simply saying if their position was, the notwithstanding language doesn't mean what you say it means, Mr. Telfian, we're willing to take that to arbitration. They didn't do that. They filed a board... But they only could take it to arbitration if they had some relevant facts. And the problem is they didn't have the relevant facts because you didn't give them any facts. Yes, I gave them the one particular fact, which is the notwithstanding clause means it preempts the entire contract. So they have an absolute right to... They could also bring a grievance that you breached the contract by the way you treated existing employees when they didn't know how you treated existing employees because you wouldn't tell them. They could have done that 15 days after it was more open to the public. That's true, too. But my other point is you asked the NLRB counsel about whether there's any case law on this circuit, and clearly there is. It's cited on page 22 of our brief. It's the San Diego Guild case where this court says, as to the board's initial contention, the issue is whether the union must offer more than mere suspicion or surmise for it to be entitled to information. Balancing these two conflicting propositions, the solution requires some initial but not overwhelming demonstration by the union that some violation is or has been taking place. In other words, a current violation, which is impossible in this case, given the notwithstanding language. And finally, I would point out that we are not gobbling up the entire contract. We are simply delaying the implementation of various provisions of the contract until 15 days after the store is open to the public. At that point, the union could raise any and all of the grievances it now contends it wants to raise. This is simply a timing mechanism. It is not a gobbling up mechanism. And the final point is, the board counsel said that we all agree that the collective bargaining agreement could not apply to the store until 15 days after it opened to the public. That's the law. We didn't need to negotiate that. We didn't need to take a strike to get this kind of language. That is already the law. No collective bargaining agreement can apply to a new retail store until the employees choose the union and the employees choose the contract. So to accept the general counsel's position is to say that we have a totally illusory contract here provision, and we do not. We spent hard effort to get this contract clause, and we ask you now to allow us to enforce it by granting our petition for review. Thank you very much, your honors. Thank all of you for your arguments today and for your briefing. And this case will be submitted for decision, and we'll be in recess for the morning. The United States appeals for the Ninth Circuit now adjourned.
judges: Schroeder, Thomas, Berzon